IN THE UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF FLORIDA

FILED BY ___ D.C.

NOV 2 3 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

LATHAM, CHARLENE Y., Plaintiff #1
Tracey Y. Latham, Plaintiff #2
David G. Latham, Plaintiff #3

V.

Donald Trump Sr., Defendant 1
1953 Trust; Estate of Decedent Jeffrey E. Epstein, Defendant 2
Darren Indyke, Defendant 3
Robert Kahn, Defendant 4

Case type: civil- 470/890/290
Judge:
Case No.:

PLAINTIFF'S STATEMENT
OF THE CASE

### PLAINTIFF'S STATEMENT OF THE CASE

1. Before the Court is Charlene Y. Latham, the Plaintiff 1 in the matter, respectfully enters this Statement as Formal Statement of the Case against the Defendants.

2. Plaintiff enters this Statement of the Case set forth in the Complaint for Damages sustained from the violent, sexual trafficking of the Plaintiff as a child victim to Defendant 1 pursuant to *Florida HB525*, the Mann Act, *et al.*

3. Plaintiff 1 is a 37 year old, Indigenous Royal woman; formally educated in Finance & Economics, a business developer, consumer products designer, talented and sought after financial advisor, business advisor, VIP Host/model and long-time victim of financial & sex crimes perpetrated for profit by the Decedent, Jeffrey Epstein; to the unlawful enrichment & benefits of the 1953 Trust & other Defendants.

4. Tracey & David Latham, Plaintiffs 2 & 3, are the biological parents of Plaintiff #1;

5. Plaintiff # 2 is the biological daughter of a now deceased Chief of Police in the Cook County region of Illinois and bloodline Indigenous Royal daughter of a Paramount Chief of Turtle Island (Opeechacanaugh) who established and maintained ongoing royal relationships with the British Monarchy for centuries after partnering with King George & his brother ( the father of the infamous Pocahontas; who is a direct bloodline cousin to the Plaintiffs 1 & 2).

6. Plaintiff #2 has family ties to the Decedent that created the relationship he exploited to abuse Plaintiff #2 & her children or offspring both sexually and psychologically.

7. Plaintiff #3 is a US Army veteran, celebrated football star from the Cook County region of Illinois who forfeited his professional football career to protect his children from the derangement and sex trafficking targeting them from the Decedent, his co-defendants and extensive network of long-term co-conspirators.

8. Plaintiffs 2 & 3, the biological parents of Plaintiff 1, were the natural and legal guardians at the time of the trafficking that are the subject of this lawsuit and all related crimes including interstate stalking and financial exploitation as outlined throughout the civil Complaint brought to recover damages for the sex abuse and emotional harm caused when the Defendants conspired to traffick Plaintiff 1 to the State of Florida to be abused as a child prostitute.

9. Defendant 1 is an active, US Government Official, businessman &legal resident of Florida.

10. Defendant 1 engaged in a relationship with the other Defendants and Decedent where purchasing sexual encounters resulted in Defendant 1 sexually abusing Plaintiff 1.

11. Defendant 2 is the Virgin Islands based Trust Estate containing the entirety of assets & instructions for posthumous distribution as declared upon the death of the Decedent Jeffrey E. Epstein; Defendant 2 was operated to launder money.

12. The Decedent, Jeffrey Epstein, is a known sexual predator and sex trafficker who engaged in trafficking, abusing & exploiting the Plaintiff for gross sums of money/career gains over the course of three decades.

13. Defendant 3 is a trustee of the 1953 Trust is being sued in his capacity as estate executor and personally as co-conspirator in the money laundering, sex trafficking and related/derivative crimes required to operate the criminal enterprise where he engaged in or provided material support to the Decedent and the 1953 Trust as the Long time, personal in-house attorney, confidant and aide for decades

14. Defendant 4 is a trustee of the 1953 Trust is being sued in his capacity as estate executor and personally as co-conspirator in the money laundering, sex trafficking and related/derivative crimes required to operate the criminal enterprise where he engaged in or provided material support to the Decedent and the 1953 Trust as the Long time, personal in-house accountant decades.

15. The Decedent, Jeffrey E. Epstein, conspired with the other Defendants to target Plaintiff #2 to sexually abuse her and her children as a systematic and long-term retaliation for Plaintiff #2 suing Jeffrey Epstein for sexually abusing her children in the late 1980s.

16. The Decedent was a relatively close family "friend" who was entrusted to transport the children to various social functions; in particular a "pajama party" in the late 1980s.

17. Instead, the Decedent trafficked the children for the sole purpose of sexual abuse after defrauding the custodial parents and guardian (biological mother of Plaintiff #2) into believing he was inviting the children to attend a "child networking event" where the children of Plaintiffs 2 & 3 would socialize with other children of affluent & socially elite families.

18. After paying a multi-million dollar settlement to Plaintiff #2 in the early 1990s (via her biological mother, known as Josephine Henry at that time) the Decedent accelerated his obsession with Plaintiff #2 and her children into a violent, decades long campaign of harassment including interstate-stalking and repeated drugged, sexual assaults.

19. The Decedent agreed to pay the multi-million dollar settlement to Plaintiff #2 because he feared public backlash and humiliation if society was to learn that he had sexually abused multiple children or learned of his extensive clientele of affluent and publicly notable men and women from around the world who paid him to engage in sexual activity with the drugged & abducted children in the Decedent's care.

20. The Decedent's obsession with Plaintiff #2 increased as his mentally unstable condition caused him to misappropriate millions of dollars belonging to Leslie Wexner to pay the settlement from funds that were allegedly willfully entrusted to the Decedent in a client-advisor type of relationship between Wexner & the Decedent.

21. After paying the settlement, the Decedent was still close to the family of Plaintiffs #1 & 2.

22. Where the Decedent was so closely associated through connections permanently tying him to the family of Plaintiff #2, his abuse of Plaintiffs 2 & 3's collective children was treated as ultimately an extremely hurtful violation of the trust & friendship that had been formed from years of close personal and social connections yet could not serve as a total and final termination of the bloodline connected relationship.

23. The Decedent exploited this position within the Plaintiff's family to escalate his sexual abuse into a decades long obsession of perpetrating a lucrative criminal operation involving sex trafficking and financial crimes committed against the Plaintiffs as revenge and retaliation.

24. Beginning in the early 1990s after the initial abuse was uncovered and litigated, the Decedent and co-conspirators began paying conspirators to act as henchmen to stalk, harass, drug and assist in abducting Plaintiff 2 & any of her children for sex abuse.

25. Plaintiffs never initiated, nor consented, to any sexual relationship of any kind with any of the Defendants or the Decedent.

26. Plaintiffs never initiated or consented to any agreement to prostitute Plaintiff 1 to the benefit of the Decedent or any of the Defendants.

27. The Decedent continued the sexual abuse of Plaintiff #1 by surreptitiously drugging her & Plaintiff #2 to abduct either Plaintiff 1 or 2 (or any of her & Plaintiff #3's other

minor aged offspring, male or female) at his mentally deranged whim to conduct his vengeful, for profit sex trafficking & blackmail scheme.

28. Plaintiffs 1 or 2 (and any of her other 5 male & female children) were presented as *working prostitutes* consenting to be used as sexual objects by the wealthy clientele who paid significant sums of money or favors to the Decedent and his co-conspirators for the hedonistic &illicit sexual experiences.

29. The Decedent conspired with the other Defendants to traffick the Plaintiffs 1 & 2 for sexual abuse as retaliation for being sued previously but also to orchestrate a lucrative sex trafficking ring involving Plaintiff #2 and her six children (all fathered by Plaintiff #3) **_specifically_** in order to "recover" the millions of dollars stolen from Wexner to pay the aforementioned settlement.

30. The Decedent conspired with Defendants 2,3, & 4 to launder the proceeds from the sex trafficking and financial crimes involving the Plaintiffs in a manner that would conceal the true nature of the origins of the money while repaying, or attempting to repay, the money stolen from Wexner plus interest.

31. The Decedent conspired with Defendants 2, 3, & 4 to target the Plaintiffs for financial & business related crimes when the Plaintiffs' security measures prevented them from orchestrating the repeated, drugged, sexual assaults that were the basis of the sex trafficking ring they operated.

32. Defendants 3 & 4 acted in their professional capacities to protect the Decedent and his estate, Defendant 2, from any additional criminal or civil prosecution arising from the Decedent's obsession with sexually abusing Plaintiff 2 & any of her children by

leveraging whatever resources they could access, including blackmail of the wealthy clients of the sex trafficking ring they operated,.

33. The Decedent became so obsessed with not only repaying Wexner the money stolen from him but also with creating a massive system of blackmail targeting the affluent and socially prominent clients whose desires to engage in illicit sexual experiences with children who could not consent and or unconscious adults drugged for the purpose of sexual assault.

34. The Decedent and his co-conspirators who include but are not limited to Defendants 2, 3, & 4 of this action worked to service the sexual pathologies and illicit sexual desires of numerous royals, heads of state, billionaires, prominent executives, wealthy business people, and their cronies from around the world specifically to ensnare them into being blackmailed.

35. During one of many abductions where Plaintiff 1, as a minor child/young teen was taken, against her will and without the consent of her parents, The Decedent explained to Plaintiff #1 that he paid the settlement to her family when she was a very small child because he knew that " if the lawsuit went public he [sic] would be ostracized by the social class & affluent circles he [sic] had worked so hard to be allowed into and could not accept that".

36. The Decedent was obsessed with being accepted into the wealthy, educated and or successful classes of people whom he had infiltrated without having an education, successful business, or significant wealth to attain entry into the elite social circles he had become welcomed into.

37. This fear of likely ostracization of the Decedent if it became public knowledge that he engaged in anti-social and illegal sexual acts involving children and drugged adults caused the Decedent to explain to Plaintiff 1 that he "would not allow those people to treat him like an outcast when they are just as bad, if not worse, than he is."

38. The Decedent explained to the Plaintiff that he would be repeatedly abusing her sexually & exploiting her financially to not only retaliate against her mother for suing him & causing him to feel "forced" to steal from Wexner to pay the settlement; but also to exact revenge against the wealthy and prominent people he serviced that he feared would quickly turn their backs on him if he had been publicly sued for the sex trafficking and sexual assaults against the Plaintiffs' family.

39. Obsessed with making sure that he had enough evidence of the criminal conduct, sexual abuse, sexual perversions & illicit business dealings of numerous affluent and prominent associates from around the world, the Decedent took great care in befriending, soliciting and engaging an extensive list of prominent people in his scheme to sexually abuse and exploit the Plaintiffs.

40. Defendant #1, Donald Trump Sr., is one of the affluent and prominent persons who willfully paid the Decedent and co-defendants/co-conspirators fantastic sums of money to indulge in sexual activity with Plaintiff 1 at the 358 El Brillo Way Palm Beach FL property when the Plaintiff was still a minor child/young teen.

41. Plaintiff 1 was a minor child under the age of 18 at all times that the Defendant 1 completed the transactions with the Decedent & his co-conspirators to sexually abuse Plaintiff 1.

42. Presented as a "child prostitute" to Defendant 1, Plaintiff 1 was drugged and abducted from her mother's home and transported across state lines in violation of the Mann Act prohibiting trafficking for the purpose of prostitution or sexual activity to the aforementioned private residence located in the State of Florida for this sexual assault masked as child prostitution.

43. While chained to a structure in the aforementioned property and presented to Defendant 1 as a child prostitute consenting to use for Defendant 1's sexual interests, Plaintiff 1 was physically and violently assaulted by Defendant 1.

44. During the assault, the Plaintiff, was drugged to the point of being unable to defend herself from the abuse or consent to anything.

45. Defendant 1 assaulted and abused Plaintiff 1 with open handed slaps to the face, hitting Plaintiff 1, a minor child at the time, about the body with open hands, violently punching her about the body/face and sexually assaulting her including by violently twisting and striking the Plaintiff's still developing breasts in an attempt to punish Plaintiff 1 and forcefully "wake" her to perform sex acts for him.

46. Defendant 1 assumed Plaintiff 1 was only in a drunken or inebriated stupor caused by Plaintiff 1 "willfully over-indulging in drugs or alcohol served prior" to the private encounter.

47. While satisfying himself with sexually and physically abusing Plaintiff 1 who was still in chains and too incapacitated by the drugs the Decedent and his co-conspirators had injected her with to defend herself, Plaintiff 1 was able to ask Defendant 1 "why was he doing this?" throughout the assault.

48. Defendant 1 responded by explaining that he had "paid Jeffrey good money for her [sic] and would get his money back one way or another!"; punctuating the statement with intermittent physical assaults and sexual abuse as previously described.

49. To recover monies paid to the Decedent & his co-conspirators in the sex trafficking operation and criminal enterprise they orchestrated for decades, Defendant 1 engaged in a form of economic terrorism the Decedent & co-conspirators / co-defendants orchestrated targeting the Plaintiffs for intellectual property and financial/investment advising thefts that provided lucrative business data & profits to the Defendants.

50. The Defendants targeting of the Plaintiffs to steal, misappropriate and make illegal use of business data to defraud various investors and consumers became a systematic step in the Defendants intent to unlawfully "recover money paid" for sex abuse claims and "unsatisfactory" sexual abuse experiences masked as prostitution.

51. Specific claims regarding the theft of business data, financial/investment advising services and intellectual property are required to be litigated in specific venues outside the State of Florida due to the nature of those crimes & laws violated.

### *Prayer for Relief*

52. Plaintiffs assert that the Defendants intent to dehumanize, retaliate against and exploit the Plaintiffs caused great financial and emotional harm over the course of three decades during which the Defendants engaged in the criminal conduct targeting the Plaintiffs;

53. Plaintiffs bring suit to recover equitable damages for the long-term emotional harm caused by the sex trafficking, derivative crimes of interstate-stalking, *et al.*

54. Plaintiffs are seeking damages in excess of fifty million dollars for the sex crimes from the Defendants where the sale, proceeds from any sale or possession of the real property described above is being demanded as part of the damages sought by the Plaintiffs.

55. Plaintiff 1 has filed a Notice of Lis Pendens with the Court regarding 358 El Brillo Way, Palm Beach FL.

56. **Plaintiff is seeking injunctive relief** to halt the demolition of the real property situated at 358 El Brillo Way, Palm Beach FL where the property may contain evidence of the crimes; Plaintiff 1 asserts demolition is a high dollar attempt to destroy evidence of the crimes and claims as set forth in this Statement.

57. Dispute with property includes claims that the Property was bought with monies defrauded from the Plaintiffs or with profits the Defendants 2, 3, & 4 collected illegally from the Decedent's decades long scheme of sexual abuse with profits from affluent "clients" to the Defendants sex trafficking operations including Defendant 1.

**I declare under penalty of perjury that everything I have stated in this document is true and correct.**

Signed in the County of Dallas, in the State of Texas 11/11/2020 12:54pm

Submitted respectfully,

Charlene Y. Latham
4900 Airport Parkway
Addison TX 75001
1+469.751.5068
Charlene272@hotmail.com

| Court file: | Document# 002 | Filed: 11/11/2020 (submission) | Page **1** of **1** |
|---|---|---|---|

**November 11, 2020**

**Attn: USD COURT SOUTHERN DISTRICT OF FLORIDA**

ATTN: CLERK'S OFFICE
701 CLEMATIS ST
WEST PALM BEACH FL 33401

RE: Latham(s) v. Donald Trump Sr., 1953 Trust, Robert Kahn, Darren Indyke

   Court Action: Plaintiff Statement of the Case w/ Notice of Lis Pendens

Dear Court:

   Please allow this correspondence to explain that I, *Charlene Latham*, one of the Plaintiffs, submitted the enclosed brief "Plaintiff Statement of The Case" to initiate the action and obtain a case number. The pending formal complaint will be submitted separately.

   It is requested that all communication be sent electronically via the email below as the USPS mail delivery system has been extremely disrupted and almost inoperable in use for me to receive mail in traditional formats for the past 2 ½ years. The USPS failure to deliver or process mail for more than 2 years is a separate, but ongoing, issue that would make it necessary to use the email below for communication. All parties are so authorized to send any communication via email including legal filings, unencrypted; I agree to receive said correspondence as possible or necessary.

Thank you for your attention.

Signed respectfully,

Charlene Y. Latham

P: (469) 751-5068
E. Charlene272@hotmail.com

Filed in US District Court of Southern District of Florida
11/11/2020  (submission)

IN THE UNITED STATES DISTRICT COURT

FOR THE

SOUTHERN DISTRICT OF FLORIDA

FILED BY ___MKA___ D.C.

NOV 23 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

LATHAM, CHARLENE Y., Plaintiff #1
Tracey Y. Latham, Plaintiff #2
David G. Latham, Plaintiff #3

V.

Donald Trump Sr., Defendant 1
1953 Trust, Defendant 2; Estate of Jeffrey E. Epstein
Darren Indyke, Defendant 3
Robert Kahn, Defendant 4

Case type: civil- 470/890/290
Judge:
Case No.:

**NOTICE OF
LIS PENDENS**

## LIS PENDENS

NOTICE IS HEREBY GIVEN that the foregoing action has been commenced and is now processing in the United States District Court for the Southern District of Florida between the parties named above for damages including possession of the real property, together with all its buildings, appurtenances, land and improvements, known as 358 El Brillo Way, PALM BEACH, Florida and recorded as:

Legal Description:

    Being all of lot 40 and the West 24.3 feet of Lot 39, El Bravo Park, as recorded in Plat Book 9, Page 9, in the records of Palm Beach County, Florida, and

    BEING that portion lying West of Lot 40, El Bravo Park, in section 27, Township 43 South, Range 43 East, as recorded in Plat Book 9, Page 9, Public

Court file:    Document#: 002    Filed:11/11/2020 (submission)    Page **1** of **2**

Records of Palm Beach County, Florida being bounded on the West by the West side of an existing concrete seawall and the northerly extension thereof as shown on the Adair & Brady, Inc., drawing IS-1298, dated March 25 1981, and bounded on the East by the shore line and shown on the plat of El Bravo Park, and bounded on the North and South by the Westerly extensions of the North and South lines respectively of Lot 40, containing 0.07 acres, more or less.

THE PROPERTY CONTROL NUMBER IS 50-43-43-27-06-000-0391.

The civil action regarding ownership and possession of 358 El Brillo Way, PALM BEACH, Florida as recorded with the County of Palm Beach Florida was duly filed with the United States District Court Clerk for the Southern District of Florida. The real property, together with all its buildings, appurtenances, land and improvements, that is the subject of this action, is an asset included in the 1953 Trust under the ownership of Laurel Inc., which is also property of the 1953 Trust. All parties are hereby given notice this 11th day of November 2020.

Signed in the County of Dallas, in the State of Texas 11/11/2020 2:25pm

Submitted respectfully,

Charlene Y. Latham
Charlene272@hotmail.com
1+469.751.5068
4900 Airport Parkway
Addison TX 75001
